**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 06-1704**

───────────────

COSTELLO CONSTRUCTION OF MARYLAND,
INCORPORATED; LIBERTY MUTUAL INSURANCE
COMPANY,

                                                    Plaintiffs - Appellees,

         versus

J.D. LONG MASONRY, INCORPORATED,

                                                  Defendant - Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:05-cv-00742-GBL)

───────────────

Argued: March 13, 2007                 Decided: June 26, 2007

───────────────

Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

───────────────

Affirmed in part, vacated in part, and remanded with instructions by unpublished per curiam opinion.

───────────────

**ARGUED:** Stephen Murray Seeger, QUAGLIANO & SEEGER, Washington, D.C., for Appellant. David Hilton Wise, WATERS & WISE, P.L.L.C., Fairfax, Virginia, for Appellees. **ON BRIEF:** Leonard A. Sacks, Rockville, Maryland, for Appellant. Paul V. Waters, WATERS & WISE, P.L.L.C., Fairfax, Virginia, for Appellees.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Costello Construction (Costello) received a substantial contract to build a new administration building for Loudoun County Public Schools (Loudoun County or County). Costello subcontracted the masonry work to J.D. Long Masonry, Inc. (J.D. Long). Four months after J.D. Long commenced its work on the building, Costello terminated the subcontract and hired another masonry company to complete the work. Costello sued J.D. Long in federal district court, seeking indemnification and damages for breach of contract. J.D. Long counterclaimed for wrongful termination and damages caused by Costello's delays to the construction schedule. The district court granted summary judgment to Costello on J.D. Long's counterclaims. Following a bench trial, the district court awarded $777,138.41 in damages to Costello. J.D. Long appeals. We affirm the order of partial summary judgment for Costello but reduce its damages award to $489,224.69.

I.

On September 15, 2003, Loudoun County awarded Costello a contract to construct a new administration building for $21,435,200. The contract provided a substantial completion date of January 10, 2005, and a final completion date of February 10, 2005. The contract said that "time was of the essence" and provided that Costello would pay $2,500 per day in liquidated

2

damages for delays to substantial completion and $1,000 per day in delays to final completion. J.A. 1339.

Costello subcontracted with J.D. Long to do the masonry work for a fixed sum of $1,435,000. The subcontract stated that J.D. Long had 50 days to complete the exterior masonry work, which entailed installing "Arriscraft masonry units at the first level, cast stone above the Arriscraft, and above the cast stone brick masonry with cast stone bands." Appellant's Br. at 4. J.D. Long was originally scheduled to start work in April 2004, but the start date was delayed by several months due to problems beyond J.D. Long's control. On August 11, 2004, Costello informed J.D. Long that the new completion date for the exterior masonry work was September 26, 2004. J.D. Long contested the end date, stating that it had 50 working days to complete the work. J.D. Long said that it would be unable to finish the work until the end of October.

Costello expressed concerns about the quality of the masonry work soon after J.D. Long started. Among other problems, Costello complained that the brickwork did not comply with the job specifications, the cast stones were damaged, and the first-floor Arriscraft wall was improperly installed. (J.D. Long's on-site foreman, Michael Boyd, admitted at trial that he was unaware of the masonry specifications or the 50-day timetable.) On October 29, 2004, Costello told J.D. Long that its "performance on the Project has been and continues to be seriously deficient." J.A. 1446.

Costello then sent a notice-to-cure letter on November 1, 2004, stating that Costello would terminate the subcontract if J.D. Long did not take immediate corrective action. J.D. Long assured Costello that it would correct the problems, but said that it could not finish the work until the end of November. Costello decided not to take any action under the subcontract until that time. J.D. Long failed, however, to correct the deficiencies or complete the work by the promised date. On December 9, 2004, Costello hired another company, Bragunier Masonry, to take over the work on the building's exterior. J.D. Long continued to work on the interior of the building.

In January 2005 Loudoun County threatened to terminate its contract with Costello, due in part to defects in the masonry work. Loudoun County then hired a masonry consultant, Wiss Janney, Elstner Associates, Inc. (Wiss Janney), to review J.D. Long's work and identify the corrective action needed. On March 10, 2005, Costello notified J.D. Long of the County's concerns with the masonry work. Costello stated that it would give J.D. Long another opportunity to cure its breach of the subcontract. J.D. Long denied that it was the cause of the County's complaints. On May 20, 2005, after receiving the report prepared by Wiss Janney, Costello sent another notice-to-cure letter, which instructed J.D. Long to correct the deficiencies listed in the report. J.D. Long

4

failed to remedy Costello's and Loudoun County's concerns, and Costello terminated the subcontract on June 22, 2005.

Costello sued J.D. Long in the district court for breach of contract, seeking $1,767,702 in damages. J.D. Long counterclaimed for wrongful termination, requesting $677,832 in damages for delays caused by Costello and quantum meruit relief for work already performed. The district court granted partial summary judgment to Costello on J.D. Long's counterclaims. After a bench trial the district court awarded Costello $777,138.41 in damages.

J.D. Long appeals the district court's order granting partial summary judgment to Costello and the award for damages. We review the summary judgment decision de novo, and, with respect to the bench trial, we review the district court's factual findings for clear error and its legal determinations de novo. See Williams v. Sandman, 187 F.3d 379, 381 (4th Cir. 1999).

II.

A.

J.D. Long contends that the district court erred in granting summary judgment to Costello on J.D. Long's counterclaim for damages caused by Costello's delays. J.D. Long says that these delays cost it $370,951 for additional scaffolding and $306,881 for additional labor. The district court determined that J.D. Long's

5

counterclaim for damages was precluded by Articles 4.1.1.1 and 4.1.1.3 of the subcontract.

Article 4.1.1.1 ("Time is of the essence") of the subcontract states:

> The Contractor has the right to direct the manner in which the Subcontractor performs its work. Subcontractor shall proceed with the performance of the work at such time and in such sequence as the Contractor may direct and/or as required by the Schedule of Progress, which may be updated and revised from time to time by the Contractor as working conditions require, including overtime or shift work performance as necessary. Subcontractor shall perform overtime work and/or provide additional shifts and/or increase crews and equipment to assure timely completion of the project at not [sic] cost to Contractor, <u>unless and only if</u> the costs therefore are paid by the Owner for the Subcontractor's behalf.

J.A. 1391 (emphasis added). Article 4.1.1.3 ("Damages for Delay") states that "[a] time extension shall be the sole and exclusive remedy of the Subcontractor for delays or suspensions caused by Contractor." J.A. 1391.

These two provisions unambiguously prevent J.D. Long from recovering monetary damages from Costello, even for delays that Costello caused, unless Loudoun County agrees to pay the costs. Under Maryland law, which governs our interpretation of the contract, "[w]here a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed." <u>Feick v. Thrutchlev</u>, 586 A.2d 3, 4 (Md. 1991). We therefore affirm the district court's grant of

6

summary judgment to Costello on J.D. Long's counterclaim for damages.

B.

J.D. Long also claims that the district court erred in determining that Costello terminated the subcontract for default. J.D. Long says that the termination was wrongful, and therefore a breach, because Costello did not provide it proper notice or sufficient opportunity to cure the defects in the masonry work. In addition, J.D. Long argues that it could not cure the defects in the exterior masonry because Costello had prohibited J.D. Long's crew from returning to work on the building's facade.

J.D. Long's claims are without merit. Beginning in August 2004 Costello repeatedly advised J.D. Long, orally and in writing, that its work was deficient. Costello told J.D. Long on October 29, 2004, that it was in default of the subcontract, and it sent J.D. Long a 14-page notice-to-cure letter on November 1, 2004. The letter informed J.D. Long of the corrective action that it needed to take and stated that it had three days, pursuant to Article 6.1 of the subcontract, to cure the default. Although Costello could have terminated the subcontract on November 4, it provided J.D. Long over a month to address the deficiencies.

J.D. Long's claim that it could not cure the default because it was not permitted on the construction site is also meritless. Costello did not bar J.D. Long from working on the

7

exterior of the building until December 9, 2004. J.D. Long had substantial opportunity to cure its default by this date, and Costello reasonably concluded that extending more time to J.D. Long would result in additional damages. Thus, the district court correctly determined that Costello was entitled to terminate J.D. Long's subcontract on grounds of default.

III.

J.D. Long challenges the $777,138.41 in damages awarded to Costello at trial. In calculating this award, the district court first determined that J.D. Long's breach caused $1,028,151.40 in damages: $210,000 for liquidated damages, $249,084.29 to repair J.D. Long's deficient work, $126,396 to complete the exterior masonry work, $42,151.89 to heat the building until the masonry work was finished, $37,074 to replace cracked masonry stones, $147,341.23 for administration and overhead costs, $72,000 for litigation costs, and $144,104 for attorneys' fees. The court then subtracted the unpaid balance on the subcontract, $251,013, which is the amount that Costello saved by terminating it.

J.D. Long says that the damage award should be vacated for two reasons. First, it says that it is not liable for liquidated damages because Loudoun County has not withheld from Costello any money for the 158-day delay in the building's completion. Second, it argues that the court erred in calculating

8

the 20 percent in administration and overhead costs that Costello could recover under the subcontract.[1]  We review the factual underpinnings of the district court's damages calculations for clear error, "but to the extent those calculations were influenced by legal error, review is de novo." United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co., 86 F.3d 332, 334 (4th Cir. 1996).

A.

J.D. Long disputes the award for liquidated damages.  The district court determined that J.D. Long delayed the project's completion by 60 days, and was therefore liable for $210,000 in liquidated damages ($2,500 for each day to substantial completion and $1,000 for each day to final completion).  J.D. Long says that the district court erred in awarding a sum for liquidated damages because Loudoun County has not attempted to recover such damages from Costello.

We agree that J.D. Long is not liable for liquidated damages.  Article 3.3.1 of the subcontract states, "The

---

[1] J.D. Long also claims that Costello owed $339,478 under the subcontract, not $251,013.  J.D. Long says that the two exhibits that the court used to determine the balance of the subcontract were unreliable.  J.D. Long, however, did not object to the admission of these exhibits, nor did it cross-examine Costello about their contents or authenticity.  J.D. Long thus waived any objection to the admission of the two exhibits, see, e.g., Clausen v. SEA-3, Inc., 21 F.3d 1181, 1190 (1st Cir. 1994), and the district court did not clearly err in using them to calculate the balance on the subcontract.

Subcontractor shall be responsible for its proportionate share of liquidated damages . . . including all or a portion of any liquidated damages assessed by the Owner against the Contractor." J.A. 1391. The subcontract clearly provides that Costello can recover liquidated damages from J.D. Long only if it is required to pay liquidated damages to Loudoun County. The County, however, has not claimed any liquidated damages against Costello. Indeed, the district court explicitly found that "Loudoun County did not withhold [liquidated damages] from the contract balance." J.A. 2622. Although the County has withheld $750,000 "to insure all the punch list items are done," its representative, Tom Sullivan, made clear at trial that this sum does not include money for liquidated damages. J.A. 691-92. Sullivan also affirmed that the County does not intend to assert its right to seek liquidated damages.

The $210,000 award for liquidated damages against J.D. Long is also improper under contract law principles. The purpose of breach of contract damages "is to place the non-breaching party in the same position it would have been in but for the breach." Air Caledonie Int'l v. AAR Parts Trading, Inc., 315 F. Supp. 2d 1319, 1337 (S.D. Fla. 2004). In this case, the district court's award places Costello in a better position than it would be in but for the breach because the $210,000 would become a windfall when the County pays Costello the $750,000 that it withheld to ensure completion of the punch list items. Of course, Costello could be

10

injured if Loudoun County decides at a later date to seek liquidated damages, but this injury is speculative. Damages for breach of contract are inappropriate when the injury is "speculative, possible, or imaginary." Schonfeld v. Hillard, 218 F.3d 164, 172 (2d Cir. 2000); see also Willard Packaging Co. v. Javier, 899 A.2d 940, 945 (Md. App. 2006) (stating that liquidated damage provision is not enforceable when it is not a reasonable estimate of the damages suffered). For these reasons, we conclude that the district court erred as a matter of law in awarding liquidated damages to Costello.[2]

### B.

The district court also committed clear error in calculating the damages that Costello could recover for overhead and administration costs. Article 6.1 of the subcontract provides that the "contractor may immediately take all steps necessary to supplement the work activities of Subcontractor and charge all resulting cost therefrom plus 10% overhead and 10% profit to Subcontractor." J.A. 1393. The district court awarded Costello $147,341.23 under this provision, finding that Costello was entitled to 20 percent of the following costs: the cost to complete the exterior masonry work ($126,396); the cost to repair

---

[2] J.D. Long also argues that the district court abused its discretion in admitting Costello's expert witness testimony regarding the delay attributable to J.D. Long. Because we conclude that the liquidated damages are improper, we do not reach this evidentiary issue.

11

J.D. Long's deficient work ($249,084.29); the expert consultant fees ($18,827.39); the cost to enclose and heat the building ($42,151.89); the cost to replace cracked masonry stones ($37,074); liquidated damages ($210,000); and Costello's expert witness fees ($53,172.61).

The court committed three errors in calculating the administration and overhead costs. First, the 20 percent markup on liquidated damages is error in light of our conclusion that Costello cannot recover liquidated damages from J.D. Long. See supra part II.A. Second, the markup on expert witness fees is inappropriate because the subcontract does not permit Costello to recover 20 percent of litigation costs as part of overhead and administration. Third, the court's figure for the cost to complete the masonry work ($126,396) already included the 20 percent markup because Costello paid only $105,830 to finish the exterior masonry work. These errors require Costello's recovery under Article 6.1 of the subcontract to be reduced from $147,341.23 to $90,593.51[3] and its overall damage award to be reduced by an additional $21,166 to account for the cost-to-complete figure that was inflated by 20 percent.

_____

[3]The $90,593.51 sum is 20 percent of the following costs:  the cost to complete the masonry work ($105,830), the cost to repair the deficient work ($249,084.29), expert consultant fees not related to litigation ($18,827.39), the cost to enclose and heat the building ($42,151.89), and the cost to replace the cracked masonry stones ($37,074).

IV.

In sum, we affirm the district court's order of partial summary judgment for Costello.  We conclude, however, that the damage award to Costello must be reduced by $287,913.72 ($210,000 for liquidated damages, $56,747.72 for administration and overhead costs, and $21,166 for the cost to complete the masonry work).  We therefore vacate the judgment entered in favor of Costello with respect to damages and instruct the district court on remand to enter judgment in favor of Costello for $489,224.69.

<u>AFFIRMED IN PART</u>,
<u>VACATED IN PART</u>,
<u>AND REMANDED WITH INSTRUCTIONS</u>